IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY NICHOLS<br>Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. WMN-15-690 |
| DAYENA CORCORAN<br>Defendant. | * | |
| | ***** | |

MEMORANDUM

**I. Background**

Plaintiff Anthony Nichols ("Nichols"), a former prisoner at the Maryland Correctional Institution in Jessup ("MCIJ"), filed a self-represented 42 U.S.C. § 1983 civil rights Complaint for "monetary, compensatory, punitive, and nominal damages against Defendant, the former Warden at MCIJ and current Assistant Commissioner for the Maryland Department of Public Safety and Correctional Services ("DPSCS"). Nichols, using a kitchen sink approach in raising his claims, alleges that: his right to be free from sexual assault and battery was violated on May 29, 2013, by "shakedown specialists;" he has been subject to deliberate indifference to his serious medical needs, as the recommendation to see a specialist for his lower spinal injury was not followed;[1] he has been exposed to unsafe living conditions; he was not provided a remedy; he has been subject to mail theft; he is being confined to his cell for twenty-three hours a day, where there is no ventilation system, causing him breathing complications; and when he complained about his breathing difficulties, unspecified parties "became resistant about treatment." ECF No. 1.

---

[1] In a subsequent letter, Nichols complained about being denied recommended radiology tests and being transported in chains across regions at a high rate of speed in a "fabricated objective" to obtain diagnostic procedures. ECF No. 5. He further provided a "timeline" of diagnostic treatment, recommendations, and delays in care. *Id.*

Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which Nichols has opposed. ECF Nos. 21 & 23. Defendant's Motion, construed as a motion for summary judgment, shall be granted without oral hearing. *See* Local Rule 105.6 (D. Md. 2014).

## II. Standard of Review

Defendant's Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011

Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167. The Court is more than satisfied that given the volume of exhibits presented here, it has ample information with which to address the motions as filed for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: by its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district

3

court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Nichols is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. Discussion

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94

(2007), and liberally construes Nichols' pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978). In Nichols' unverified complaint, he seemingly claims that he was subject to excessive force, denied medical treatment for injuries he sustained, not provided administrative remedies, and was exposed to unsafe living conditions and mail theft while imprisoned.

Defendant states that the Internal Investigative Division ("IID") conducted an investigation into Nichols' allegations of a May 29, 2013 assault by correctional officers at the Baltimore Central Booking and Intake Center ("BCBIC"), which included an alleged "illegal cavity search" and being struck in the lower back with the butt of a shotgun. ECF No. 21-2. The IID report concluded that Nichols' allegations were not credible based upon interviews and a review of the BCBIC records and Nichols' medical records. *Id.* With regard to Nichols' allegations that he was denied proper medical care, Defendant argues that she had no involvement with any treatment decision involving Nichols and that no correctional official has a direct role in the medical treatment of inmates. Defendant additionally provides Nichols' extensive medical record. Paper No. 21-3 (filed separately). It shows that Nichols has been subject to laboratory testing and spinal MRI, CT scans and x-rays; received Ultram, Neurontin, Amitriptyline, and Tramadol medications, physical therapy; and was seen by the Neurosurgery Department of the University of Maryland Medical System and imaging personnel at Bon Secours Hospital for diagnosed conditions of spondylosis, disc herniation, spinal stenosis, and indentation of nerve roots at multiple levels. *Id.*

In his Opposition and accompanying memorandum, Nichols appears to claim that Defendant had "constructive knowledge" of his inadequate medical attention, denial of administrative remedy

procedure forms, exposure to unconstitutional conditions of confinement, and mail theft claims.[2] ECF No. 23.

The Complaint here was solely filed against former MCIJ Warden Corcoran. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal*, 118 F.3d 1416, 1423 (10th Cir. 1997). Further, absent subjective knowledge, a prison official is not liable. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Defendant Corcoran may not be held liable under a theory of *respondeat superior*. Under *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach under § 1983 if a Plaintiff can establish three elements. These are: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799

---

[2] In his memorandum, Nichols lists the names of known and unknown individuals allegedly involved in: contacting the Office of Administrative Hearings for meritorious complaints; coordinating the administrative remedy procedure at MCIJ; representing MCIJ in proceedings involving disputes between inmates and MCIJ staff; factfinding in proceedings for the DPSCS; investigating and supervising the MCIJ mailroom; providing medical care at MCIJ; and conducting inmate body searches [at the BCBIC]. ECF No. 23-1. To the extent that Nichols seeks to amend his Complaint to name these parties as Defendants, he shall not be granted leave to amend. The claims against these individuals shall be dismissed without prejudice to allow him to file a separate action. Indeed, Nichols has already filed suit against these individuals in a new

(citations omitted).

Further, § 1983 liability on the part of a supervisory Defendant requires a showing that: "(1) the supervisory defendant failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendant deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted). There is no allegation or showing demonstrating Corcoran's supervisory liability with regard to the alleged denial of medical care. *See Shaw*, 13 F.3d at 799; *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990). Aside from Nichols' self-serving and conclusory statements, there is no evidence that Corcoran had actual or constructive knowledge that medical staff were ignoring Nichols' complaints regarding his lower back and that the denial of care posed "a pervasive and unreasonable risk" of constitutional injury to Nichols. Plainly, she is entitled to rely on the medical expertise of trained health care professionals. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slaking v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Nichols' claim with regard to former Warden Corcoran is based on her supervisory position as a Warden at MCIJ, as she does not appear to have been personally involved in the matter at issue. There is no evidence to suggest that she had actual or constructive knowledge of the matter at issue here.

Moreover, although a pleading "does not have to set out in detail the facts on which the claim

---

action.   *See Nichols v. Oakley, et al.*, Civil Action No. WMN-16-870 (D. Md.).

for relief is based," 2 Moore's Federal Practice ¶ 8.04[1], at 8–22 (3d ed.2002), it must give the Court and Defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007)). A court may dismiss a Complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

In the absence of any particulars regarding his naked assertions of excessive force, exposure to unsafe living conditions, mail theft, or not providing a remedy, Nichols has failed to set out a claim against the former MCIJ Warden.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, treated as a motion for summary judgment, will be granted. A separate Order follows dismissing this Complaint.

Date: March 30, 2016
                                               /s/
                                        William M. Nickerson
                                        Senior United States District Judge